## Joe Dugan

| | |
|---|---|
| **From:** | Neil Satterlund <nsatterlund@nlsp.org> |
| **Sent:** | Monday, September 22, 2025 7:45 PM |
| **To:** | Joe Dugan |
| **Cc:** | James D. Bragdon; Sangeetha Kannan; Christina Araviakis |
| **Subject:** | [EXTERNAL] Re: Artemus Eden -- violations of PI order |

Hi, Joe. As promised, I've spoken to Mr. Eden about these reports, and have our position.

As to report #1, the conduct restricted is "contacting, either directly or indirectly, any elected U.S. officials, including any U.S. Senators, who reside at Station House Apartments, or their visiting staff." That can't possibly mean staff who are visiting their office in the senate.

As to report #2, Mr. Eden tells me that he was talking to himself, and may have been overheard. I wasn't there, but my understanding is that your client has security cameras at the concierge desk-- so if they think that's inaccurate, I'm happy to look over the footage and discuss it with my client.

As to report #3, this appears to have been a misunderstanding based on the way NLSP words its legal service agreements. I think that communicating to Defendants through you about maintenance complaints is very much within the scope of NLSP's agreement with Mr. Eden. But I understand how he read it otherwise. I've told him to please exclusively use the him -> me -> you -> Defendants communication channel for all future maintenance complaints.

    That said, he tells me that he entered a written ticket about issues in his unit (infestation, toilet not flushing, stove and refrigerator not working properly) when he first moved back in, and nothing had been done four days later. If these communications are all properly routed through you, I do need you to actually act on them. So, will you let me know when maintenance plans to attend to Mr. Eden's service requests? I'm happy to ask him to plan to be out of the unit when they are coming over, if you give me a heads-up in advance.

    As to report #4, I'm not sure which content restriction you think he was violating. Unless these were "additional concerning incidents." If the court ever orders Mr. Eden to adhere to a global vow of silence, I'll discuss that with him.

Happy to discuss further. Let me know.

-Neil



www.nlsp.org

**Neil Colin Satterlund** (he/him)
Staff Attorney, Housing Law Unit
**Neighborhood Legal Services Program**
Email: nsatterlund@nlsp.org
Phone: 202-849-3609
64 New York Ave NE, Suite 180
Washington D.C. 20002

*Engaging Communities • Eliminating Barriers • Securing Justice*

**\*\*CONFIDENTIALITY NOTICE\*\*** This message and any attachments may be protected by the attorney-client privilege, work product doctrine or other applicable protection. If you are not the intended recipient or have received this message in error, please notify the sender and promptly delete the message. Thank you.

**Exhibit 2**

**From:** Joe Dugan <jdugan@gallagherllp.com>
**Sent:** Friday, September 19, 2025 9:51 AM
**To:** Neil Satterlund <nsatterlund@nlsp.org>
**Cc:** James D. Bragdon <jbragdon@gallagherllp.com>; Sangeetha Kannan <skannan@gallagherllp.com>; Christina Araviakis <caraviakis@gallagherllp.com>; Joe Dugan <jdugan@gallagherllp.com>
**Subject:** Artemus Eden -- violations of PI order

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Neil,

In the past 12 hours, we have received the following reports:

- Special Agent Cole with the U.S. Capitol Police advised us that Mr. Eden visited the Senate offices of Senator Padilla and interacted with Senator Padilla's staff, in violation of conduct restriction #1 of the PI Order.
- On September 18, Mr. Eden came to the concierge desk and began speaking about his deceased mother and telling a BMC employee "not to become collateral and to not get involved because his problem is between him and the 'big man.'"  This verbal exchange violates conduct restriction #2 of the PI Order.
- At 7:15am this morning, Mr. Eden approached the concierge desk to complain about an "emergency" in his apartment.  The issues he then raised were not in the nature of "emergency" issues but rather were maintenance requests and requests for new appliances.  This verbal exchange violates conduct restriction #2 of the PI Order.
- Two residents submitted complaints about interactions with Mr. Eden.  One resident complained that Mr. Eden stopped him to claim:  "I am the president of the resident association and Station House owes you money."  The resident reported feeling unsafe/uncomfortable.  The other resident reported that Mr. Eden screamed profanity at him when he would not allow Mr. Eden to access the building through an exit-only door.

By my count, we are less than four days into Mr. Eden's tenure, and we already have three conduct violations and two additional concerning incidents.  Defendants intend to move on an emergency basis for Mr. Eden to be held in contempt of the PI Order and for dissolution of the injunction, unless Mr. Eden is willing (perhaps in collaboration with his social workers) to voluntarily vacate the premises.  Please let me know your position ASAP.

Thanks,
Joe



**Joe Dugan**
D: 410 951 1421 | C: 443 934 3714
jdugan@gallagherllp.com

**Gallagher LLP**
218 N Charles Street, Suite 400
Baltimore, MD 21201
gallagherllp.com

This email transmission may contain CONFIDENTIAL and PRIVILEGED information. If you are not the intended recipient, please notify the sender by email, do not disseminate and delete immediately.