# UNITED STATES DISTRICT COURT
## for the DISTRICT OF COLUMBIA

| | |
|---|---|
| ARTEMUS EDEN,<br>    Appellee,<br><br>    v.<br><br>STATION TOWNHOUSES LLC and<br>BOZZUTO MANAGEMENT Co.,<br><br>    Appellants. | Case No. 1:25-cv-02944 |

## APPELLEE'S MOTION FOR ATTORNEY'S FEES

Plaintiff/Appellee Artemus Eden, via the undersigned counsel, hereby moves this Court to order Defendants/Appellants Station Townhouses LLC and Bozzuto Management Co. (together, "Bozzuto") to pay reasonable attorney's fees. 28 USC § 1447(c) provides that when a case is remanded for lack of subject matter jurisdiction, the court in its discretion "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

Bozzuto did not have objectively reasonable grounds to believe it had any right to do this. Bozzuto's removal of this case to federal court was, in its own words, "sloppy." By Bozzuto's own admission, they made factual contentions concerning their own citizenship in a signed and filed petition for removal that were false.

Throughout this case's four month sojourn in federal court, Bozzuto garbled legal standards in its favor, adopted a maximalist litigation strategy compelling the needless effusion of billable hours on all sides, and somehow, even after being ordered to supplement its briefing concerning the basis for diversity jurisdiction, arrived at oral argument professing to have not yet obtained or read their own trust documents, or ascertained where exactly they live.

1

Mr. Eden asks this Court to order Bozzuto to reimburse his counsel, the Neighborhood Legal Services Program of Washington DC ("NLSP"), a nonprofit provider of free legal services to lower-income residents of the District that is entirely funded by grants from the Legal Services Corporation and the bar of the District of Columbia. Bozzuto's false claim on the attention of this Court has expended significant public resources which Bozzuto should be ordered to replenish.

As required, Mr. Eden's counsel has conferred with James Bragdon, counsel for Bozzuto. The parties tried in good faith to determine whether the areas of disagreement could be narrowed; Mr. Eden understands this motion to be opposed.

## **PROCEDURAL BACKGROUND**

As is set forth more fully in the parties' motions practice and briefing, Bozzuto, Mr. Eden's landlord, filed six cases against him in the Landlord and Tenant Branch of the D.C. Superior Court, then chose to abandon those cases, declare that Mr. Eden's tenancy had ended, and change the locks. Mr. Eden learned that this had happened when he tried to return home on August 28, 2025. He contacted his counsel, who had a brief but spirited discussion with Bozzuto's counsel that did not result in Mr. Eden being restored to possession of his home. Mr. Eden filed suit in D.C. Superior Court in the afternoon of Friday, August 29, 2025, seeking an emergency TRO so that he could stop being homeless.

On September 1, 2025 (Labor Day), Bozzuto's attorney, James D. Bragdon, filed a Notice of Removal. This Notice, which he signed,  says that "Station House is domiciled in New York and Delaware… [t]herefore, the jurisdictional requirement of complete diversity is satisfied." ECF 1, paras. 14-15. Mr. Bragdon also certified that Bozzuto "have read this Notice of Removal, and to the best of their knowledge, information, and belief, formed after a reasonable inquiry, it is well grounded in fact, is warranted by existing law or an extension or modification of existing

law, and is not interposed for any improper purposes." ECF 1, para. 20.

The DC Superior Court, which had scheduled a hearing on Mr. Eden's emergency TRO motion for the afternoon of September 2, 2025, canceled the hearing after it processed the notice of removal.

Mr. Eden's counsel did wonder whether removal was appropriate—both whether complete diversity of citizenship was satisfied, and whether removal had been sought for the purpose of prolonging litigation and imposing costs on Mr. Eden's counsel. But the matter was still at the pleading stage, so that Mr. Eden was not yet in a position to conduct discovery into the citizenship of all of the partners of Station Townhouses LLC. Accordingly, Mr. Eden's legal team decided to focus on getting Mr. Eden out of the streets/van/homeless shelter/hostel, and leave questions concerning the propriety of removal to be determined after the emergency preliminary motion was resolved.

Mr. Eden waited, homeless, until this Court heard and granted his motion for a preliminary injunction on September 11 and 12, 2025.

Bozzuto, having not "identified a legal issue or fact, issue of fact as to which there's a substantial likelihood of success of prevailing on appeal," (ECF 24 at p. 31:5-7) unsuccessfully sought to stay the preliminary injunction before this Court, and then filed an interlocutory appeal with the D.C. Circuit later the same day.

The D.C. Circuit denied Bozzuto's request for an administrative stay pending review of Bozzuto's emergency motion to stay the injunction on September 15, 2025, then denied Bozzuto's emergency motion to stay the injunction on September 19, 2025. Mr. Eden and Bozzuto then briefed the appeal, and Mr. Eden's counsel, with the thoroughly appreciated support and assistance of several colleagues, prepared for oral argument, including two full

moots.

On November 20, 2025, the DC Circuit, *sua sponte per curiam*, ordered Bozzuto to submit "affidavits stating facts sufficient to establish their citizenship, together with a supplemental brief" addressing whether Bozzuto's filings "establish diversity jurisdiction over this action."

On November 26, 2025, Bozzuto accordingly filed their "Supplemental Statement Regarding Jurisdiction" ("JDX Statement") and attached an affidavit in which they admitted for the first time that some of the owners of Station Townhouses LLC are "a consortium of individuals/trusts/corporations," (JDX Statement at 2) and that "through a close inspection of these records and subsequent outreach to the trustee," they had "identified one co-trustee of two trusts who is a resident of the District of Columbia." (JDX Statement Exh. B, para. 8d.)

Mr. Eden's legal team discussed this development, but concluded that it was necessary to continue working on the case as though this question had not been raised, since it would be an unjustifiable risk to show up to appellate oral argument unprepared to address each issue in the case.

At oral argument before the DC Circuit, on December 8, 2025, Bozzuto's counsel explained that "[w]e did investigate sort of the basis for diversity jurisdiction at the time of removal, albeit in a truncated fashion given the pendency of the TRO motion." Transcript of December 8, 2025 oral argument before the DC Circuit Court of Appeals ("Appeal Tr.") at 3:17-20. He opined that "in hindsight, we could have been more thorough than we were. So that was an oversight..." *Id.* at 3:20-22.

Judge Pillard said that he was "not super impressed with the basis, originally. I don't think the legal standards were correctly stated, no appreciation of the difference between a

partnership or an LLC under our law and a corporation, and where it's not a corporation, you know, doing the right analysis even, let alone the factual inquiry, and I'm not sure that we have the information that we need now." *Id.* at 4:9-16. Bozzuto had not "even really identified the type of trust with enough specificity so that we know this is a kind of trust where the trustee's domiciliary matters as distinct from the beneficiary's domiciliary, and so I'm not sure what to make of that, and we gave you notice of the shortcomings." *Id.* at 4:25-5:5.

The court asked Bozzuto's counsel whether the trust as issue was formed pursuant to the Maryland Statutory Trust Act or the Discretionary Trust Act. Bozzuto's counsel responded, "I don't know, Your Honor. I communicated with the trustee. I have not seen the trust document, but I did communicate with the trustee…" *Id.* at 5:11-13.

The court then directed Bozzuto's counsel to the assertion, in Paragraph 14 of the Notice of Removal, that "Station House is an entity incorporated in the State of Delaware. That's not true, is it?" *Id.* at 6:6-8. Bozzuto's counsel replied "No, you're right, Your Honor. That is an— that is an error. It's an LLC… And you know, I don't—the removal could have been done, you know, much more, I think, professionally than it was. I was not actually involved in it. I came into—the case afterward, but I'm here, you know—" *Id.* at 6:9-18.

Judge Katsas summed up the jurisdictional issue as far as it had come to be understood: there was a trustee who Bozzuto had "identified as a resident" but "can't speak with certainty" to whether or not that trustee was a citizen. "So either he is, which might or might not be a reasonable inference from a sloppy use of the word resident—in which case diversity is destroyed, or you don't know, in which case you haven't proven diversity, notwithstanding the removal and notwithstanding our order for help with that. So I mean, either way, I don't see how you come before us." *Id.* at 8:13-9:2.

5

Bozzuto's counsel agreed that "it was an error in the first instance, and I—sloppy is probably a good word for it… I think, you know, we probably have no basis to continue in federal court." *Id.* at 9:5-22.

The DC Circuit accordingly entered judgment on December 29, 2025, banishing this case "whence it came."

Mr. Eden brings the instant motion timely, within fourteen days of the judgment remanding this case.

## I.    BOZZUTO LACKED OBJECTIVELY REASONABLE GROUNDS TO BELIEVE REMOVAL WAS LEGALLY PROPER.

The Supreme Court says that it is an "oft-repeated rule that diversity jurisdiction in a suit by or against [an artificial entity] depends on the citizenship of… each of its members." *Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990). In this Circuit, "a traditional trust… assumes its trustees' citizenship for diversity jurisdiction." *Wang by and through Wong v. New Mighty U.S. Trust*, 843 F.3d 487, 495 (D.C.Cir. 2016).

Because "[t]he moving party bears the burden of showing that removal is proper," *Toxin Free USA v. J.M. Smucker Co.*, 507 F.Supp.3d 40, 43 (D.D.C. 2020), and because no facts concerning the citizenship of the constituent members of the defendants were available to him at the pleading stage of this case—and also because he was focused on trying to resume, and then remain, living indoors in his own home— Mr. Eden relied on Bozzuto's certification of the facts supporting the claim of diversity.

Following oral argument, the DC Circuit Court of Appeals has entered judgment remanding the case to DC Superior Court "because the defendants have failed to allege the requisite facts to establish the complete diversity of citizenship required for federal diversity jurisdiction." DC Circuit Judgment, December 29, 2025.

The Supreme Court has held that:

"The process of removing a case to federal court and then having it remanded back to
state court delays resolution of the case, imposes additional costs on both parties, and
wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness
of removal as a method for delaying litigation and imposing costs on the plaintiff. The
appropriate test for awarding fees under § 1447(c) should recognize the desire to deter
removals sought for the purpose of prolonging litigation and imposing costs on the
opposing party, while not undermining Congress' basic decision to afford defendants a
right to remove as a general matter, when the statutory criteria are satisfied."
*Martin v. Franklin Capital Corp.*, 546 US 132, 140 (2005).

In order to strike that balance, "the standard for awarding fees should turn on the
reasonableness of the removal… courts may award attorney's fees under §1447(c) only where
the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

The removing party here lacked an objectively reasonable basis for seeking removal.
They told this Court that they knew where they lived. Later, they admitted that they didn't
actually much bother checking until the D.C. Circuit ordered them to. Even then, they came to
oral argument without having actually obtained or read their own trust documents. Mr. Eden
respectfully submits that no basic decision of Congress can be undermined by disincentivizing
Bozzuto's approach—which, if we take them at their word, was to remove this case, certifying
that the statutory criteria were satisfied, when they had not even started asking whether or not
this was the case.

Bozzuto turned out not to have evidentiary support for the factual contention, in their
Notice of Removal, that Station Townhouse LLC "is domiciled in New York and Delaware." By
their own admission to the DC Circuit Court of Appeals, Bozzuto's notice of removal "could
have been done, you know, much more, I think, professionally than it was." Appeal Tr. 6:13-14.

Even after the DC Circuit's *sua sponte* order raising serious questions about Bozzuto's
claimed basis for diversity jurisdiction, Bozzuto decided to proceed to oral argument without

providing the court, Mr. Eden, or its own counsel with enough information to reach a definitive conclusion. Bozzuto told the DC Circuit that this was because they themselves had not attained certainty as to where they lived. This caused a further, significant, entirely unnecessary expenditure of billable hours, as Mr. Eden's counsel worked with his colleagues to prepare for oral argument.

Bozzuto's most recently articulated explanation for its behavior is that "[w]e did investigate sort of the basis for diversity jurisdiction at the time of removal, albeit in a truncated fashion given the pendency of the TRO motion." Appeal Tr. 3:17-20. (That is, they were in a rush because they were scrambling to try to preempt the D.C. Superior Court before that court could hear Mr. Eden's emergency motion seeking to undo the self help eviction so that he could stop being homeless.)

Few details of Bozzuto's actual pre-removal inquiry are available as yet, because Bozzuto and its legal team, ordered to explain themselves by the DC Circuit, did not adequately prepare the only associate who came to court. All he could say about the removal petition (other than that he had come to believe that a core factual claim was "an error") was: "I don't—the removal could have been done, you know, much more, I think, professionally than it was. I was not actually involved in it. I came into—the case afterward, but I'm here, you know—" Appeal Tr. 6:10-18.

This made for no objectively reasonable basis to seek removal. An award of attorney's fees would be appropriate, both to deter such improper removals, and to offset the legal aid resources that have been needlessly consumed.

## II.    BOZZUTO'S CONDUCT, INCLUDING FALSE STATEMENTS IN SUPPORT OF REMOVAL, CAUSED HARM THAT BOZZUTO SHOULD REMEDY

Mr. Eden acknowledges that he may only be entitled to a fee award covering time spent as a result of the improper removal, as opposed to time spent litigating the merits of his case that would have been equally expended before the D.C. Superior Court. But Mr. Eden contends that all the time he spent before this Court resulted from the improper removal, and should be covered by the fee award. None of the proceedings here would have been necessary absent the removal. D.C. law, significantly, appears untroubled by the notion of applying a sliding scale to the preliminary injunction factors. There, "the level of probability of success that must be demonstrated will vary according to the court's assessment of the other factors pertinent to the analysis. Thus, a stay may be granted with either a high probability of success and some injury, or vice versa." *Akassy v. William Penn Apartments Ltd. P'ship*, 891 A.2d 291, 310 (D.C. 2006). Bozzuto's self-help eviction was flagrantly illegal in the District of Columbia, and the irreparable harm of self-help eviction is also thoroughly settled in D.C. civil law (unlike, as we learned from Bozzuto's broad and thorough search for somewhere they might have gotten away with this, in the criminal procedure of Puerto Rico). Mr. Eden is therefore confident that the D.C. Superior Court would have granted a preliminary injunction out of hand, at the hearing that was scheduled for the afternoon of September 2, 2025 (but was taken off the calendar several hours before it was scheduled to take place, when the court processed Bozzuto's baseless Notice of Removal.)

(Mr. Eden presumes that Bozzuto had some sense that things would go quickly poorly for them in D.C. Superior Court, and that this was what prompted their mad dash to remove the case. Which, of course, should excuse neither their failure to conduct an inquiry reasonable under the circumstances, nor their subsequent failure to abide by their continuing duty to figure out the truth and report it to this Court.)

As detailed in the attached affidavits, Mr. Eden's counsel is the Neighborhood Legal

Services Program of DC.

NLSP is a venerable and capable provider of free legal services to low-income residents of the District, but it does not have an overabundance of resources. Like all of the District's free and low-cost legal services, NLSP is oversubscribed—each week, NLSP must turn away prospective clients, often leaving people with potentially meritorious defenses to fend for themselves, with as much advice as they can be given in a consultation of an hour or two.

As a matter of policy, to maintain the clear, bright line of the District's prohibition against the feudal remedy of self-help eviction, NLSP has committed to seeing this case through. NLSP and the undersigned counsel certainly continue to hope that this case will have a salutary and general deterrent effect on large corporate landlords who are tempted to lock out their tenants. That is why, in the judgment of the undersigned counsel and his superiors, all time actually necessary to litigate the merits of this case is a sound use of NLSP's limited resources.

But Bozzuto's recklessly false statement of fact in support of their claimed diversity jurisdiction has, for no valid reason, added hundreds of "billable" hours to this case.

An ordinary eviction defense—which is to say, one in which the landlord mostly obeys the law and willingly presents its claims and defenses to the proper forum—takes a fraction of the attorney and staff time that have been devoted to this case's meritless sojourn in federal court. The eight most recent eviction defense cases closed by the undersigned counsel, counting each from the initial meeting with the client and entry of appearance in the case to ultimate disposition and closure, have "billed" between eight hours, and counsel's previous record-setter: 40.25 hours. Satterlund declaration. The average time for an eviction defense, based on this more or less representative sample, is 20.187 hours. All eight cases, together, did not consume as much time as the removal-to-remand federal portion of this case.

Measured by the usual scales of landlord-and-tenant law in the District, therefore, the wholly meritless portion of this case, solely attributable to Bozzuto's recklessly false statement of fact, has been a titanic waste of public resources. 56.5 billable hours before this Court. 171.7 hours before the D.C. Circuit (where Mr. Eden is filing a separate motion, seeking those fees.) A total meritless Federal detour of 228 billable hours. Six billable weeks; more than eleven cases' worth of time.

Mr. Eden submits that it would be altogether faithful to the purposes of awarding attorney's fees to require Bozzuto and their counsel to pay for what they have done.

## III.    BOZZUTO'S BLITHELY CARELESS MISREPRESENTATION MERITS SANCTIONS

FRCP Rule 11(b) provides that an attorney, by signing and filing any paper with the court, "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances… the factual contentions have evidentiary support…"

Because Bozzuto has chosen to be so vague about what they did before filed their notice of removal, all we really have is Mr. Dugan's *post facto* speculation that his colleague who signed the removal petition probably tried to ascertain whether he was telling the truth, but did not have time to do so. He submitted false statements of fact accidentally.

For now, we might as well assume for the purpose of argument that this is true. Mr. Eden respectfully submits, though, that the behavior is still sanctionable. When a party does not have the wherewithal to figure out whether the thing it wants to say is the truth, Rule 11(b) teaches what that party must do: the claim being made with undetermined evidentiary support should be "specifically so identified," and the party must at least believe that the fact "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

11

Even if we accept, for now, that Bozzuto was facing a genuine emergency because of Mr. Eden's TRO pending in DC Superior Court, such that they had no choice but to claim diversity jurisdiction without knowing whether or not they had the right to do so, Bozzuto was required to disclose the fact that they did not know where they lived in their petition for removal. After that, they could have made a diligent inquiry to figure out where they lived. Once they found out that (as far as they can tell) they have lived here all along, they could have admitted, themselves, months ago, that the removal had been a false alarm.

They did not do this.

This Court has previously held, against defendants who turned out not to be diverse, but who argued "that the removal was a 'mistake' and an 'oversight' and that the case was removed in good faith," that "Rule 11 imposes affirmative obligations upon the defendants," and thus "the fact that the case was removed in good faith will not protect them from sanctions." *Elanex Pharmaceuticals, Inc. v. Wegner & Bretschneider, P.C.*, 129 F.R.D. 381, 381 (D.D.C. 1989). Mr. Eden contends that since, here, the defendants have admitted on the record that their pre-removal inquiry was 'sloppy' and 'could have been more professional,' this Court would have grounds to find that "removal was so improper that the defendants could not have undertaken a reasonable inquiry as is required by Rule 11." *Id.* Likewise, here, "[t]he defendants, and not [the plaintiff], should bear the costs of this mistake." *Id.*

This Court has also held that "counsel's mistake cannot excuse the failure… Since the only basis for federal jurisdiction was [] to be diverse citizenship, [counsel] had an obligation to make a reasonable inquiry into the basis for diversity. The Court finds that it was not reasonable to overlook the citizenship of counsel's own client…" *Weisman v. Rivlin*, 598 F.Supp.2d 724, 726 (D.D.C. 1984).

Furthermore, even if, counterfactually, Bozzuto had presented an objectively reasonable basis for diversity jurisdiction, they have presented this Court with a grab bag of colorable and frivolous arguments, all presented as though they had equal merit.

Bozzuto opined that the first preliminary injunction factor was "they have to convince the Court not just that they'll probably maybe win or they have some good arguments. The Court has to be very, very sure at this point that they will prevail on the merits of the case." ECF 24 at 167:19-23. Mr. Eden is not aware of any court that has ever said that this is the standard.

As this Court has correctly found, Bozzuto's only possible defense against Mr. Eden's wrongful eviction claim is the theory that they had valid cause to believe that Mr. Eden had abandoned his tenancy. But Bozzuto is litigating this case with pertinacity and vigor, even though Bozzuto's own assessment of the ultimate merits sounds perilously close to hoping for jury nullification: "my position is that I think that a jury could find, although I'm certainly not suggesting it's a slam dunk or even that we're more likely than not to prevail. I'm not even suggesting that." ECF 24 at 172:19-22.

When Mr. Eden contended that being ordered to post a substantial bond would deprive him of the benefit of a preliminary injunction readmitting him to his home, and Bozzuto objected, this colloquy followed:

> THE COURT: What if the plaintiff doesn't have the means to post the bond?
> MR. DUGAN: Then he's not entitled to a preliminary injunction.
> THE COURT: I don't think that's right. I think I'm allowed to take into account the plaintiff's ability to pay.
> MR. DUGAN: The reality is—
> THE COURT: Do you disagree with that.
> MR. DUGAN: I think there are some cases where courts have said that a bond is not necessary. But I don't know… can't pretend that I've looked at all of them."
> ECF 24 at pp. 182:15-183:3.

That is, Bozzuto's counsel first adopted a legal position, presented with the force of

absolute, certain truth. When this Court opined that Bozzuto's counsel was wrong, only then did he admit that he hadn't actually finished surveying the caselaw—which means, necessarily, that Bozzuto did not actually know whether or not "a plaintiff who doesn't have the means to post a bond is not entitled to a preliminary injunction" was a valid argument. Bozzuto tried it anyway.

They sought an indefinite stay of this Court's preliminary injunction, although they had "not identified a legal issue or fact… as to which there's a substantial likelihood of success of prevailing on appeal." ECF 24 at p. 31:5-7.

Mr. Eden is mindful of the notice requirement, but his counsel was not able to complete a Rule 11 motion more than twenty-one days before the due date to file this motion. In the alternative to his request for fees under 28 USC § 1447(c), he therefore asks this Court to consider ordering Bozzuto to show cause why it should not face Rule 11 sanctions.

## IV.    CALCULATION OF ATTORNEY'S FEES

The D.C. Circuit has explained that the general framework for calculating a fee award is "(1) determination of the number of hours reasonably expended in litigation; (2) determination of a reasonable hourly rate or 'lodestar,' and (3) the use of multipliers as merited." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). Although *Covington* involved statutory fee-shifting, this Court has quoted the three-part test in awarding fees pursuant to 28 USC § 1447(c). *Adolph Coors Co. v. Truck Ins. Exchange*, 383 F.Supp.2d 93, 95.

(1): HOURS REASONABLY EXPENDED

The number of hours expended before this Court are detailed in the attached declaration. Mr. Eden respectfully contends that he came to this Court prepared to make a relatively brief and narrow presentation, but Bozzuto's teeming host of witnesses, and various efforts to find distant legal authorities supporting their straightforwardly illegal conduct, significantly increased the

expenditure of time. That is, Mr. Eden contends that all of his claimed hours were necessary as a result of Bozzuto's litigation decisions.

(2): DETERMINATION OF HOURLY RATE

Mr. Eden is represented by NLSP, a nonprofit provider of free legal services.

In a civil-rights case, to determine the correct hourly rate, the moving party "may point to such evidence as an updated version of the *Laffey* matrix or the U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community." *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995).

This Court has recently reaffirmed, in a statutory fee-shifting case, that the hourly rate at which fees are awarded "does not differ based on whether an attorney is engaged in private or public practice." *Hudson v. American Federation of Government Employees*, 2023 WL 4053394 (D.D.C 2023) (*citing Blum v. Stenson*, 465 U.S. 886, 897 (1984). The Supreme Court in *Blum* considered and rejected a cost-based method for awarding fees to nonprofit legal services, instead using the prevailing market rate. *Blum*, 465 U.S. at 181.

The D.C. Court of Appeals has awarded USAO Matrix rate fees to NLSP's sister organization, D.C. Legal Aid. *Tenants of 710 Jefferson St., NW v. District of Columbia Rental Housing Com'n*, 123 A.3d 170 (D.C. 2015). Although the non-moving party objected that the USAO Matrix "does not reflect rates charged by attorneys in the submarket of rental housing litigation," the court held that "where the attorney work to be compensated is not regularly billed, [USAO Matrix] rates are a presumptively reasonable measure of billing rates in the District of Columbia… the [USAO] Matrix is a very good place to start, and, we would add, in most cases will be the best place to end lest litigation over attorney's fees overshadow the underlying case." *Id.* at 182, 184.

15

As noted in the attached Declaration, the undersigned counsel (before the D.C. Rental Housing Commission, when working at a different law practice that charged below-market rates for public-spirited non-economic reasons) has been awarded attorney's fees at the USAO Matrix rate.

<u>(3): THE USE OF MULTIPLIERS AS MERITED</u>

Mr. Eden does not request any multiplier to the lodestar calculation. He contends that the lodestar method adequately takes into account all factors relevant to a "reasonable" attorney's fee.

**<u>CONCLUSION</u>**

As this Court has found, Bozzuto expended a great deal of both sides' time on legal efforts that all flowed from their legally unjustifiable decision to abandon their cases in landlord tenant court and lock Mr. Eden out of his home. As has emerged before the DC Circuit (where this case went after Bozzuto, without articulating any error other than disagreeing with Bozzuto, appealed this Court's careful and thoughtful use of discretion in crafting an equitable remedy responsive to both sides' concerns), Bozzuto never had any business taking up the federal courts' time in the first place.

Mr. Eden therefore requests an award of attorney's fees for 56.5 billable hours, as detailed in the attached Declaration, for a total award of $42,690.50.

Respectfully submitted,

January 12, 2026

Neil Colin Satterlund, D.C. Bar #1531473
Neighborhood Legal Services Program
Counsel for Plaintiff Eden
64 New York Ave NE, Suite 180
Washington, DC 20002
(202) 849-3609; NSatterlund@nlsp.org

16

## DECLARATION OF NEIL SATTERLUND

I hereby declare as follows, under penalty of perjury according to the laws of the District of Columbia.

I am a staff attorney at the Neighborhood Legal Services Program of Washington, DC.

I have been practicing law since I graduated from Berkeley Law in 2012.

Since the beginning of 2019, my entire practice has been in landlord-tenant law in the District of Columbia—first at the D.C. Tenants' Rights Center, a small 'low-bono' firm, then with NLSP since November of 2024. At both practices, I represented tenants with issues involving eviction, housing condition problems, rent control, public housing and vouchers, security deposits, and all other disputes with D.C. landlords. I appeared in all stages of litigation before courts and administrative agencies of the District.

I do not have access to enough data to come up with a ranking of all D.C. landlord-tenant lawyers by degree of experience, but my best guess is that I would appear somewhere in the top fifty.

I have represented Artemus Eden since December 9, 2024.

As with all of our clients, we have never demanded or collected any fee from Mr. Eden. NLSP is a grant-funded nonprofit.

NLSP's agreement with the Legal Services Corporation provides that as a condition of our funding, with rare exceptions not at issue here, we may only assist households living within 200% of the Federal poverty line.

NLSP's retainer agreement with Mr. Eden specifies that any award of attorney's fees is assigned to NLSP.

Rachel Weiss is my direct supervisor at NLSP. We worked together on this case, and given how often we spoke about the case as we worked together, I can confirm of my own knowledge that she was working on the days and for the times set out in the table below. Rachel graduated from law school in 2016, and has spent her entire legal career at NLSP.

My fair market rate of $768 per hour, and Rachel's fair market rate of $707 per hour, are drawn from the USAO's updated version of the so-called Laffey Matrix, which I reviewed online on January 12, 2026 at https://www.justice.gov/usao-dc/media/1395096/dl?inline.

I have been awarded fees at the USAO Matrix rate for practicing landlord-tenant law in the District. I attach a true copy of one such award, from the D.C. Rental Housing Commission in *Kerpec Mgmt. LLC* et al *v. Hartzfeld* et al., RH-TP-19-31,242.

There is some case law supporting a competing update to the Laffey Matrix, variously known as the *Salazar* or *Kavanaugh* Matrix, which I also reviewed on January 12, 2026 at http://www.laffeymatrix.com/see.html. From my discussions with other free legal service providers, I know that some of them use this matrix when requesting attorney's fees. However, I am requesting fees at the USAO Matrix rate, which seems more reasonable to me. Both Rachel and I, under this competing matrix, would have an hourly rate of $948.

This higher rate has been used to award fees to similar nonprofit legal practices—I attach as an exhibit one such award to my colleague, Sophia Jayanty, of Legal Counsel for the Elderly.

The following table accurately reflects my and Rachel's time spent working on this case, beginning once the notice of removal was processed, and excepting time spent before the DC Circuit Court of Appeals. We both tracked all time we spent on this case in accordance with NLSP's timekeeping practices, and entered it into our electronic case management system, from which I retrieved these records.

18

I have exercised billing judgment to the best of my ability. I am not requesting fees for time spent sorting out admission to this Court, or for any of the time spent drafting the complaint and TRO motion filed with the Superior Court (even though much of that work was copy-pasted into filings made before this Court, reducing the time claimed on those entries). As I always do, I tried to avoid spending any unnecessary time on any filings, preparation, or other tasks, and planned my work to minimize the number of days between finishing a filing and presenting it in court so as to cut down on time reviewing and refreshing my recollection of my own work.

| Name | Date | Task | Hrs. | Rate | Total |
|------|------|------|------|------|-------|
| N. Satt. | 09/01/25 | Case planning- research removal, federal civil procedure, etc. | 1.5 | $768.00 | $1,152.00 |
| N. Satt. | 09/02/25 | Adapt previously-filed superior court emergency TRO motion into Federal motion | 3 | $768.00 | $2,304.00 |
| N. Satt. | 09/03/25 | Meeting with Rachel and Adam to plan overall approach to case | 1 | $768.00 | $768.00 |
| N. Satt. | 09/03/25 | Finish and file emergency motion, draft and file appearance, prepare other case-initiation paperwork | 4 | $768.00 | $3,072.00 |
| N. Satt. | 09/04/25 | Calls with clerks, emails with opposing counsel, case planning | 2 | $768.00 | $1,536.00 |
| N. Satt. | 09/05/25 | Initial/TRO hearing, including prep | 2.5 | $768.00 | $1,920.00 |
| N. Satt. | 09/09/25 | Work on reply to opposition to TRO motion | 1 | $768.00 | $768.00 |
| N. Satt. | 09/10/25 | Draft and file reply to opposition to TRO motion | 8.75 | $768.00 | $6,720.00 |
| N. Satt. | 09/11/25 | Preliminary injunction motion hearing, incl. final preparation and subsequent debrief with client | 8.25 | $768.00 | $6,336.00 |
| N. Satt. | 09/12/25 | Preliminary injunction motion hearing part 2, incl. discussion with opposing counsel, prep, and debrief with client | 4 | $768.00 | $3,072.00 |
| N. Satt. | 09/22/25 | Prep for sanctions hearing, including research and discussion with client | 2 | $768.00 | $1,536.00 |
| N. Satt. | 09/23/25 | Prep for sanctions hearing, including research and second round of discussion with client | 3.5 | $768.00 | $2,688.00 |
| N. Satt. | 09/24/25 | Sanctions hearing | 2.5 | $768.00 | $1,920.00 |
| N. Satt. | 10/24/25 | Review and revise joint statement; discuss with counsel | 1 | $768.00 | $768.00 |
| R. Weiss | 09/15/25 | Research and work on opposition to TRO/MSJ | 1.5 | $707.00 | $1,060.50 |
| R. Weiss | 09/19/25 | Review | 0.5 | $707.00 | $353.50 |
| R. Weiss | 09/23/25 | Case scheduling and research | 2 | $707.00 | $1,414.00 |

| | | Review filings, schedule upcoming work. Meeting with Neil to prepare for sanctions | | | |
| R. Weiss | 09/23/25 | hearing | 1.5 | $707.00 | $1,060.50 |
| R. Weiss | 09/24/25 | Sanctions hearing, including preparation | 2.5 | $707.00 | $1,767.50 |
| R. Weiss | 09/25/25 | Draft answer to counterclaims | 3.5 | $707.00 | $2,474.50 |
| R. Weiss | 09/26/25 | Answer finalizing and filing | 1 | $707.00 | $707.00 |
| | | **Total:** | 56.5 | -- | $42,690.50 |
| | | | | | |

I have reviewed my timekeeping and case records for the past year, looking for cases in which I entered a full appearance in the Landlord and Tenant Branch of the DC Superior Court, that were opened within roughly the past year and have already been closed.

I found eight such cases. Counting each from the initial meeting with the client to ultimate disposition and closure, I have "billed": 11.75 hours, 13 hours, 20.5 hours, 21 hours, 8 hours, 32.75 hours, 14.25 hours, and 40.25 hours.

The mean of these eight cases, by my math, is 20.1875 hours. The total time NLSP has spent on this case since the Notice of Removal was filed (before this Court and the D.C. Circuit) is, therefore, by this estimate, more than fifteen cases' worth of time.

The Housing Unit of NLSP was at its capacity for the entire time we worked on this case, and was obliged to reject potential clients each week. I conducted intake interviews for a number of potential clients who, as I reported to my supervisors, had meritorious defenses, but who we did not have capacity to take on as clients for extended representation. If we had not been spending this much time working on Mr. Eden's case, we would have taken more of those cases.

Several issues in this case were complex and/or difficult. Also, several factors (chiefly the rolling succession of emergency motions from both sides, just to reinstall and then keep Mr. Eden in his home) made this case unusually unpleasant. But in my judgment that is fairly

accounted for in the time we billed, so I have not advised Mr. Eden to request an increase from the lodestar rate.

I swear that this is all true and correct.

Neil Colin Satterlund, D.C. Bar #1531473

## **CERTIFICATE OF SERVICE**

I hereby certify that today, January 12, 2026, I am electronically filing a copy of the foregoing MOTION FOR ATTORNEY'S FEES, which will cause a copy thereof to be automatically served on Defendants via their counsel of record, Gallagher Evelius & Jones.

Respectfully Submitted,

Neil Colin Satterlund #1531473
Neighborhood Legal Services Program
64 New York Ave. NE, Suite 180
Washington, DC 20002
NSatterlund@NLSP.org, (202)849-3609
*Counsel for Plaintiff*

1

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

```
- - - - - - - - - - - - - x
ARTEMUS EDEN,                 :
                             :
          Appellee,          :
                             :
     v.                      :   No. 25-7133
                             :
STATION TOWNHOUSES LLC AND   :
BOZZUTO MANAGEMENT COMPANY,  :
                             :
          Appellants.        :
- - - - - - - - - - - - - x
```
                                    Monday, December 8, 2025

                                    Washington, D.C.


     The above-entitled action came on for oral argument
pursuant to notice.

     BEFORE:

          CIRCUIT JUDGES PILLARD AND KATSAS, AND SENIOR
          CIRCUIT JUDGE RANDOLPH

     APPEARANCES:

          ON BEHALF OF THE APPELLEE:

          NEIL COLIN SATTERLUND, ESQ.

          ON BEHALF OF THE APPELLANTS:

          JOSEPH C. DUGAN, ESQ.



2

1                          C O N T E N T S

2    ORAL ARGUMENT OF:                                PAGE

3        JOSEPH C. DUGAN, Esq.
     On Behalf of the Appellants            3; 14

4
         NEIL COLIN SATTERLUND, Esq.
5        On Behalf of the Appellee                 10

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE CLERK:  Case No. 25-7133, Artemus Eden v.

3    Station Townhouses LLC and Bozzuto Management Company,

4    appellants.  Mr. Dugan for the appellants.  Mr. Satterlund

5    for the appellee.

6              ORAL ARGUMENT OF JOSEPH C. DUGAN, ESQ.

7                ON BEHALF OF THE APPELLANTS

8          MR. DUGAN:  May it please the Court.  I'll

9    address first the issue of diversity jurisdiction, as we

10   discussed in the supplement that I filed on November 26th,

11   because obviously, if the Court doesn't have jurisdiction,

12   then nothing else I say matters today anyway, and I want

13   to be clear up front about two points.

14          First, we only became aware of the potential

15   diversity-defeating participation of a D.C. resident

16   trustee, remote from the project SPE or the party entity,

17   following the court's sua sponte order.  We did

18   investigate sort of the basis for diversity jurisdiction

19   at the time of removal, albeit in a truncated fashion

20   given the pendency of the TRO motion.  I think, in

21   hindsight, we could have been more thorough than we were.

22   So that was an oversight, but at the time of removal,

23   based on our internal diligence, our discussions with the

24   ownership groups of the entity, we had no reason to

25   believe that there was a D.C. resident somewhere in the



4

1    tree.

2            Had we discovered that issue, obviously we

3    either would not have removed or we would have, if we

4    thought we had a basis to do so, we would have done so and

5    disclosed the fact to the district court and then argued

6    about the legal significance of it, but --

7            JUDGE PILLARD:  But I'm not --

8            MR. DUGAN:  -- here we are.

9            JUDGE PILLARD:  -- I'm not super impressed with

10   the basis, originally.  I don't think the legal standards

11   were correctly stated, no appreciation of the difference

12   between a partnership or an LLC under our law and a

13   corporation, and where it's not a corporation, you know,

14   doing the right analysis even, let alone the factual

15   inquiry, and I'm not sure that we have the information

16   that we need now.

17           One of the owners of the -- of one of the owners

18   of owners of owners --

19           MR. DUGAN:  Yes.

20           JUDGE PILLARD:  -- that you've identified you

21   refer to as a D.C. resident, but the question for

22   diversity is domicile, a.k.a. citizenship, and it looks

23   like Station House still hasn't identified the -- you

24   know, provided the information that's needed to show

25   whether that trustee is a D.C. domiciliary or even really

1    identified the type of trust with enough specificity so

2    that we know this is a kind of trust where the trustee's

3    domiciliary matters as distinct from the beneficiary's

4    domiciliary, and so I'm not sure what to make of that, and

5    we gave you notice of the shortcomings.

6            Do you know whether the trust at issue, the one

7    where there's a trustee that's, as you say, a D.C.

8    resident, is that one that's formed pursuant to the

9    Maryland Statutory Trust Act or was it formed pursuant to

10    the Discretionary Trust Act?  Do you know that?

11            MR. DUGAN:  I don't know, Your Honor.  I

12    communicated with the trustee.  I have not seen the trust

13    document, but I did communicate with the trustee, and he

14    represented that this is an irrevocable grantor trust

15    under Maryland law.

16            Obviously, assuming that it is in the nature of

17    a common-law trust, a trust in Maryland, like in most

18    jurisdictions, is not a juridical person, and so

19    therefore, under Americold and this Court's decision in

20    Wong, Ex Rel. Wong, it appears to be a traditional trust,

21    in which case the trustee's citizenship determines the

22    citizenship of the trust, and we have a problem at that

23    point.

24            JUDGE RANDOLPH:  You mentioned your removal

25    petition.



6

1          MR. DUGAN:  Yes, Your Honor.

2          JUDGE RANDOLPH:  And that's inaccurate, right,

3  in paragraph 14?  Do you know which one I'm talking about?

4          MR. DUGAN:  You're referring to the notice of

5  removal?

6          JUDGE RANDOLPH:  Station House is an entity

7  incorporated in the State of Delaware.  That's not true,

8  is it?

9          MR. DUGAN:  No, you're right, Your Honor.  That

10  is an -- that is an error.  It's an LLC.

11          JUDGE RANDOLPH:  Yes.

12          MR. DUGAN:  Yes.  And you know, I don't -- the

13  removal could have been done, you know, much more, I

14  think, professionally than it was.  I was not actually

15  involved in it.  I came into --

16          JUDGE RANDOLPH:  But --

17          MR. DUGAN:  -- the case afterward, but I'm here,

18  you know --

19          JUDGE RANDOLPH:  -- there are a couple open

20  questions, factual questions -- and this is not in the

21  record, but if you know, let me know --

22          MR. DUGAN:  Yes, Your Honor.

23          JUDGE RANDOLPH:  -- number one, is he back in

24  the apartment now?

25          MR. DUGAN:  He is.



1          JUDGE RANDOLPH:  He is.  Is he paying rent?

2          MR. DUGAN:  No, he is not.

3          JUDGE RANDOLPH:  Did he get a voucher, or has he

4    ever appealed the disallowance of his vouchers?

5          MR. DUGAN:  He did, and I'm sure Mr. Satterlund,

6    his attorney, will have more information on the status.

7    The last we understand, he was granted good cause for a

8    merits hearing on the termination of his voucher.  I don't

9    know the status of the hearing.  I don't know --

10          JUDGE RANDOLPH:  And --

11          MR. DUGAN:  -- if a decision was made.

12          JUDGE RANDOLPH:  And this is in the record, I

13   think.  I remember reading it.  His lease was month to

14   month, right?

15          MR. DUGAN:  That's right.  That's right.  So --

16          JUDGE PILLARD:  And as far as you know, has

17   Mr. Eden complied with the stipulations of the injunction

18   as to his conduct?

19          MR. DUGAN:  Not fully.  We had an initial

20   hearing on that perhaps two weeks after the injunction

21   entered and raised to Judge Mehta below some issues that

22   had come up with respect to compliance.  Judge Mehta did

23   not act on that.

24          So the way we styled it was a motion for an

25   indicative ruling, given the pendency of the appeal, that



1    the court would dissolve the injunction based on the

2    violations.  Judge Mehta didn't really rule one way or

3    another on that.  He declined to take action at that time

4    but, I think, indicated in the hearing that he recognized

5    at least some violations.  They were not as serious,

6    though, as the issues that we raised in the, you know, in

7    the PI papers or in the briefing here.

8            JUDGE KATSAS:  Can I take you back to

9    jurisdiction --

10           MR. DUGAN:  Yes, Your Honor.

11           JUDGE KATSAS:  -- for a second?  So as I

12   understand it, there's a chain of ownership leading up to

13   a trust which has trustees -- or a trustee -- identified

14   as a resident of the District of Columbia.  Is that

15   trustee a citizen of the District of Columbia?

16           MR. DUGAN:  He's an individual.  He lives here.

17   I believe so, but I guess I can't speak with certainty to

18   that, and he's an attorney in --

19           JUDGE KATSAS:  Okay.  So either he is, which

20   might or might not be a reasonable inference from a sloppy

21   use of the word resident --

22           MR. DUGAN:  Right.

23           JUDGE KATSAS:  -- in which case diversity is

24   destroyed, or you don't know, in which case you haven't

25   proven diversity, notwithstanding the removal and



9

1    notwithstanding our order for help with that.  So I mean,

2    either way, I don't see how you come before us.

3              MR. DUGAN:  Your Honor, I understand.  I mean,

4    it was a -- we -- it was an error in the first instance,

5    and I -- sloppy is probably a good word for it -- I

6    understand him to be an individual who resides in D.C.  I

7    don't have any information that he lives anywhere else.

8    So I don't have any reason to believe he's not a citizen

9    of D.C.

10             JUDGE KATSAS:  Which would destroy diversity.

11             MR. DUGAN:  Yes, and that was the other point I

12   wanted to make, in all candor to the Court.  I mean, I

13   searched to see whether there are any cases where, in the

14   situation of a remote trustee or a remote member of an LLC

15   or a remote entity -- investor in entity -- whether any

16   cases treat that as different than the Carden rule, and I

17   found no such cases.  So --

18             JUDGE KATSAS:  Thank you.

19             JUDGE PILLARD:  All right.

20             MR. DUGAN:  So in view of that, I think, you

21   know, we probably have no basis to continue in federal

22   court.

23             JUDGE PILLARD:  We'll give you a moment or two

24   for rebuttal, but we'll now hear from Mr. Satterlund.

25             MR. DUGAN:  Understood.  Thank you, Your Honor.



1          ORAL ARGUMENT OF NEIL COLIN SATTERLUND, ESQ.

2                ON BEHALF OF THE APPELLEE

3          MR. SATTERLUND:  Good morning, Your Honors, and

4    may it please the Court.  So our position on jurisdiction

5    is that we don't have enough information to have a

6    position.  Discovery obviously has not gone forward in

7    this case.  We're relying on what we've heard from my

8    friend, and I'm not sure that I have anything to

9    contribute to --

10         JUDGE RANDOLPH:  Well, if don't have enough --

11         MR. SATTERLUND:  -- the discussion.

12         JUDGE RANDOLPH:  -- information, then the

13   petition for removal is invalid, right?

14         MR. SATTERLUND:  As far as I know, Your Honor.

15         JUDGE RANDOLPH:  Which leads me to question the

16   consequence of that.  If, in fact, we don't have -- or the

17   district court did not -- was not shown to have

18   jurisdiction, then don't we have to vacate the injunction?

19         MR. SATTERLUND:  Well, it has been our position

20   throughout this litigation that Mr. Eden's --

21         JUDGE RANDOLPH:  If they didn't have

22   jurisdiction to issue the injunction, then we have to

23   vacate it, don't we?

24         MR. SATTERLUND:  Well, I think Your Honor was

25   asking what the effect would be of vacating the



1    injunction, and I think as a matter of black-letter,

2    decades-settled District of Columbia law, you don't need

3    an injunction in order to have the legally guaranteed

4    right to live in an apartment that you're renting until --

5            JUDGE RANDOLPH:  He's not renting it anymore,

6    according to counsel for the Station House.

7            MR. SATTERLUND:  Well, I don't think that's --

8            JUDGE RANDOLPH:  How can you be --

9            MR. SATTERLUND:  -- a defensible position.

10           JUDGE RANDOLPH:  -- renting an apartment if

11   you're not paying anything?

12           MR. SATTERLUND:  Because nonpayment of rent,

13   like every other category of lease violation, is swept

14   into D.C. law that --

15           JUDGE RANDOLPH:  Well, I don't --

16           MR. SATTERLUND:  -- the case has to --

17           JUDGE RANDOLPH:  -- I don't know we have to get

18   into that.  I'm just asking, how can it be that the

19   injunction should stand if the district court didn't have

20   jurisdiction to issue it?

21           MR. SATTERLUND:  Well, I think -- I don't -- I

22   cannot imagine any way in which a court that does not have

23   jurisdiction would be able to enter a binding injunction

24   like --

25           JUDGE PILLARD:  So you'd be back where you



12

1    started, which is in D.C. Superior Court, and pursue any

2    appropriate relief there.

3             MR. SATTERLUND:  With the one change that

4    Mr. Eden is in possession of his apartment, and I think --

5             JUDGE PILLARD:  Right.  That's what I'm saying,

6    any appropriate relief, and you don't have any objection

7    to that, presumably?

8             MR. SATTERLUND:  Right, except that Bozzuto has

9    made it clear in their reply brief that they intend to

10   conduct another unlawful self-help eviction the second

11   they are not bound by federal court against doing so.

12            JUDGE PILLARD:  So you'll be ready.

13            JUDGE KATSAS:  You'll have TRO papers, or

14   whatever, ready to go.

15            MR. SATTERLUND:  We filed there before.  A

16   little updating should suffice.

17            JUDGE KATSAS:  And they'll have their eviction

18   action pending.

19            MR. SATTERLUND:  Yes.

20            JUDGE PILLARD:  All right.  Anything else?

21            MR. SATTERLUND:  Well --

22            JUDGE PILLARD:  Oh, in terms of the compliance,

23   as far as you know, there is no ongoing or no pending

24   compliance problems with Mr. Eden and the conditions of

25   the injunction the district court did enter?  I mean, I



1    realize that --

2              MR. SATTERLUND:  Correct, Your Honor.

3              JUDGE PILLARD:  -- would be academic if there's

4    no injunction anymore.

5              MR. SATTERLUND:  Correct, Your Honor.

6              To address a couple of other points that Your

7    Honors raised previously, the hearing on the merits

8    challenging the termination of the voucher was this past

9    Friday.  That's been taken under submission.  The

10   regulations say we should get a decision on that within 14

11   days.  I have a note on my calendar on day 15 to begin

12   checking with them if we don't have anything from them by

13   then.

14             Just to be clear, under D.C. law, a

15   month-to-month tenancy is, unusually in our law, not

16   something that can be terminated by the landlord without

17   going through the normal process.  The month-to-month

18   tenancy lasts until the tenant gives notice ending the

19   tenancy or the landlord-tenant court issues a judgment and

20   a writ for possession.

21             I suppose I have some thoroughly rehearsed

22   discussion of the merits of the case, but I leave it up to

23   Your Honors what, if anything, I should go into.

24             JUDGE PILLARD:  I don't think we have further

25   questions.  Thank you.



1          MR. SATTERLUND:  Thank you, Your Honor.

2          JUDGE PILLARD:  Mr. Dugan, do you want any

3    rebuttal?  You don't have to take it.

4          REBUTTAL ARGUMENT OF JOSEPH C. DUGAN, ESQ.

5               ON BEHALF OF THE APPELLANTS

6          MR. DUGAN:  Your Honor, just one point, very

7    briefly.  I mean, it's very clear where this is headed,

8    and I just want to be clear on the record, we have no

9    intention of sort of taking advantage of our own mistake

10   and doing anything to disrupt what is now the status quo.

11   I mean, the eviction case will play out that we will file

12   in D.C. court, and obviously, if we end up back in D.C.

13   Superior on the wrongful eviction, we'll litigate that,

14   but we're not going to go change the locks because the

15   Court finds that we erroneously removed.  That was our

16   mistake.  So we're not going to try to take ownership of

17   that -- or advantage of it.

18          JUDGE PILLARD:  Thank you for that assurance.

19   That's --

20          MR. DUGAN:  Thank you, Your Honor.

21          JUDGE PILLARD:  -- that's very helpful.

22          MR. DUGAN:  Yes.

23          JUDGE PILLARD:  All right.  The case is

24   submitted.

25          (Whereupon, the proceedings were concluded.)



<u>DIGITALLY SIGNED CERTIFICATE</u>

     I certify that the foregoing is a correct transcription of the electronic sound recording of the proceedings in the above-entitled matter.


_Wendy Campos_

_____     <u>December 23, 2025</u>
Wendy Campos                    Date

eScribers, LLC

eScribers
www.escribers.net | 800-257-0885

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **BOZZUTO MANAGEMENT COMPANY,** | |
| **Plaintiff,** | **Case No. 2024-LTB-4852** |
| **v.** | **Judge Tanya M. Jones Bosier** |
| ███████████, | **CLOSED CASE** |
| **Defendant.** | |

## ORDER GRANTING DEFENDANT'S SECOND AMENDED ATTORNEY AFFIDAVIT OF FEES

Pending before the Court is Defendant ███████████ Second Amended Attorney Affidavit of Fees (the "Affidavit"), filed on September 2, 2025. Plaintiff did not file an Opposition. *See* D.C. Super. Ct. R. 12-I(e). Counsel for Defendant filed the pending Affidavit in accordance with the Court's Order Memorializing August 29, 2025 Hearing (the "August Order"). *See* Ord. Aug. 29, 2025. In the August Order, the Court noted that Parties settled the matter after the Court granted Defendant's Motion to Compel on August 4, 2025. *See id*. In the Affidavit, Defendant's counsel billed 7.75 hours for $6,200 dollars. The Court incorporates the Affidavit in this Order as Exhibit 1.

Upon review of the Affidavit and record herein, it is therefore this 13th day of November 2025

**ORDERED** that the Affidavit is **GRANTED**. It is further

**ORDERED** that Plaintiff shall pay six thousand two hundred dollars ($6,200) to counsel for Defendant within forty-five (45) days of entry of this Order, or no later than Monday, December 29, 2025.

**IT IS SO ORDERED**.

_Tanya M. Jones Bosier_
Tanya M. Jones Bosier
Associate Judge
Superior Court of the District of Columbia

Copies e-filed and e-served via Odyssey.

eFiled
9/2/2025 9:45:51 AM
Superior Court
of the District of Columbia

## EXHIBIT 1

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**LANDLORD TENANT BRANCH**

**BOZZUTO MANAGEMENT CO.** )
)
)
Plaintiff, )
)
vs. )
)
█████ ██████ )
)
)
)
Defendant. )
)

Case No.:    2024 LTB 004852

Next event:  None Scheduled
Judge: Tanya Jones-Bosier

**SECOND AMENDED** Attorney Affidavit of Fees in the Matter of Bozzuto Mgmt. Co. v. █████

1.    I am counsel for ███ █████ and am employed at Legal Counsel for the Elderly as a Senior Attorney.

2.    In determining my appropriate fee, I relied on the Laffey Matrix for 2025, see Attachment A, using the fee standard associated with an attorney with eight years of experience.

3.    I graduated from law school in May 2017, received my New York bar license in May 2018, and enrolled in the District of Columbia bar in 2022.

4.    Please see below for an accounting of the work I completed in my efforts to obtain discovery from Plaintiff.

| DATE | TIME | EVENT |
|------|------|-------|
| 4/8/2025 | 1.25 hr. | Researched rules for discovery. Emailed counsel for Plaintiff re: discovery. Drafted 10-day discovery letter. |
| 4/21/2025 | .5 hr. | Emailed counsel for Plaintiff. |
| 4/24/2025 | 2.5 hr. | Prepared Motion to Reopen and Extend Discovery, to Compel Responses to Defendants' Discovery Requests, and for Sanctions and Attorney's Fees. |
| 7/21/2025 | .5 hr. | Emailed Counsel regarding outstanding Discovery |

| 7/23/25 | .5 hr | Emailed Counsel regarding outstanding Discovery |
| 8/5/25 | .5 hr | Emailed Counsel regarding outstanding Discovery |
| 8/28/25 | 1.25 | Reviewed Counsel's Motion in Opposition and Prepared for Motion Hearing |
| 8/29/25 | .75 | Attended Motion Hearing on Order to Compel |
| | 7.75 | 7.75  X $800/hr.=  $6,200 <br> **TOTAL: $6,200 dollars** |

I, Sophia Jayanty, hereby declare and affirm that the foregoing affidavit and timesheet log is true to the best of my knowledge, information, and belief.


/s/ Sophia B. Jayanty _____
Sophia B. Jayanty, Esq.

DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION

RH-TP-19-31,242

In re: 1420 17th Street, N.W.

Ward 2

**KERPEC MANAGEMENT, LLC, and
1420 17th STREET LAND TRUST**
Housing Providers/Appellants

v.

**JILLIAN HARTZFELD,
ERIN BLASBERG,
BROOKLEY VALENCIA,
CALLIE NEWTON, and
ASHLEY HERBERT**
Tenants/Appellees

**ORDER GRANTING ATTORNEYS' FEES**

August 26, 2024

**HUNTER, CHIEF ADMINISTRATIVE JUDGE:**  This matter is before the Rental
Housing Commission ("Commission") on a motion for an award of attorney's fees filed by the
above-named tenants/petitioners/appellees ("Tenants"), who prevailed before the Commission, in
a decision issued on December 21, 2022 ("Commission Decision"), on the above-named housing
providers'/respondents'/appellants' ("Housing Providers'") appeal of an order awarding the
return of a security deposit.  The Housing Providers sought judicial review of the Commission's
decision by the District of Columbia Court of Appeals ("DCCA"), 23-AA-0058, and the Tenants
ultimately prevailed on a motion for summary affirmance.

The Tenants subsequently filed a revised motion for fees on March 1, 2024 ("Motion for
Fees").  The Motion for Fees no longer requests an award of fees for work done while this matter
was pending before the Office of Administrative Hearings ("OAH"), as that office has separately

awarded the tenants fees. The Motion for Fees now includes work done while this matter was pending before the DCCA, in addition to the appeal before the Commission. The Housing Providers have not filed an opposition to the Motion for Fees.[1] For the following reasons, we grant the Motion for Fees.

## I.    DISCUSSION

Under the Rental Housing Act of 1985, D.C. Law 6-10 ("Act"), the Commission "may award reasonable attorney's fees to the prevailing party in any action under this chapter." D.C. Official Code § 42-3509.02.[2] An award of fees is presumed if, as in this case, the prevailing party is a tenant. Ungar v. D.C. Rental Hous. Comm'n, 535 A.2d 887, 891-92 (D.C. 1987).

The starting point for an award of attorney's fees, as under similar federal and local fee-shifting statutes, is the "lodestar" of reasonable hours billed at a reasonable rate. 14 DCMR § 3825.8(a) (2004); Tenants of 710 Jefferson Street v. D.C. Rental Hous. Comm'n, 123 A.3d 170, 180-81 (D.C. 2015). The Commission's rules provide a list of 13 factors by which the lodestar may then be adjusted, but these are generally "subsumed within the initial calculation of the reasonable rate and hours." 710 Jefferson Street, 123 A.3d at 180 n.12; see 14 DCMR § 3825.12(b) (2021) (revised rules explaining that lodestar method should be applied consistently with prevailing case law and that adjustment factors are only used in "extraordinary" circumstances); see also Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-20 (5th

---

[1] After the Tenants filed their original motion upon prevailing in the Commission Decision, the Housing Providers filed a motion requesting clarification of the applicable deadlines under 14 DCMR § 3825 (2021), a stay of the Commission's consideration of attorney's fees pending judicial review, and an extension of time to file an opposition to an award of fees. The Commission granted the stay and extension of time, but the Housing Providers did not file an opposition by that deadline or at any time after the renewed Motion for Fees was filed.

[2] This case technically arises under the Security Deposit Act, D.C. Law 1-48, 14 DCMR §§ 308-311. The Security Deposit Act is incorporated procedurally and substantively into the Rental Housing Act by D.C. Official Code § 42-3502.17, and accordingly we have jurisdiction to award fees.

Cir. 1974) (originally articulating 12-factor test). In total, the Tenants now seek $43,100 in attorney's fees ("Requested Lodestar").

### A.    Reasonable Hourly Rate

The Tenants seek fees based on the hourly rates provided in the U.S. Attorney's Office's Attorney Fee Matrix ("USAO Matrix").[3] The USAO Matrix replaces the "Laffey Matrix" that the DCCA has found to provide presumptively reasonable rates in the District of Columbia for attorneys operating without an established fee structure, based on the attorneys' years of practice. 710 Jefferson Street, 123 A.3d at 185-86; *see* 14 DCMR § 3825.12 (2021) (determination of reasonable hourly rate to be made in consideration of "[t]he attorney's billing practices, including whether the representation is pro bono or at a rate targeted to low- to moderate-income clients (commonly called 'low bono')"). The Tenants are represented in this matter by the D.C. Tenants' Rights Center, a law firm that charges clients a minimal hourly rate under $100 per hour for public spirited and non-economic reasons. We are satisfied that an award of fees at the applicable USAO Matrix rates[4] reasonably compensates the firm for the work performed and serves the Act's policy goal of ensuring that tenants have access to quality counsel. *See* 710 Jefferson Street, 123 A.3d at 186. Accordingly, we calculate the lodestar using the rates provided in the Motion for Fees.

### B.    Reasonable Hours Billed

We turn next to the reasonableness of the hours billed. We will reduce the allowable hours below a party's request if "the documentation of hours is inadequate," if hours were

---

[3] *See* https://www.justice.gov/usao-dc/page/file/1504361/dl (accessed Aug. 20, 2024).

[4] The rates requested, based on the years of experience of three attorneys in the years in which work was performed, range from $458 per hour for a second-year attorney in 2021 to $697 per hour for a 16th-year attorney in 2024 (the USAO Matrix still has not been updated from 2023, and those rates are used for hours billed this year).

Kerpec Mgmt., LLC v. Hartzfeld, RH-TP-19-31,242
Order Granting Attorneys' Fees
August 26, 2024

3

"excessive, redundant, or otherwise unnecessary," including where "an attorney takes extra time due to inexperience, or if an attorney performs tasks that are normally performed by paralegals, clerical personnel or other non-attorneys." 710 Jefferson Street, 123 A.3d at 187 (internal quotations omitted). In reviewing the "hours devoted to various general activities," we are mindful that the purpose of our review is not "micromanaging the practices of lawyers the court or agency has no reason to believe are padding their hours." Id. at 187 & 191.[5]

"Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." Hensley v. Eckerhart, 461 U.S. 424, 440 (1983). In this case, the Tenants entirely prevailed in the Housing Providers' appeal to the Commission and the DCCA. We observe that two time entries in the Satterlund Declaration (Motion for Fees at 16) relate to a motion to dismiss the Housing Providers' petition for judicial review, which was denied. Nonetheless, we are satisfied that shifting those fees are reasonable, given the dilatory actions of the Housing Provider in failing to file a timely brief, and that the filing of the motion to dismiss apparently spurred the Housing Providers to seek leave to late file.

We also note there were a handful of time entries related to research about entry of administrative orders as judgments in Superior Court and other actions for collection of judgment debts. At this point, we do not understand the Tenants to have filed such a case or taken other actions to enforce the OAH decision, and thus there is no matter in which they have "prevailed" yet But we are satisfied nonetheless that such research is reasonably ancillary to the

---

[5] We are concerned that several time entries for Attorney Snydor-Greenberg reflect tasks that are essentially clerical – obtaining and filing a copy of the record and calendaring deadlines. Motion for Fees at 19; see 710 Jefferson Street, 123 A.3d at 187 (fees may not be shifted "if an attorney performs tasks that are normally performed by paralegals, clerical personnel or other nonattorneys"). In light of the billing judgment apparently exercised by counsel, reducing the time entries to very small fractions of an hour, we are satisfied that any error is de minimis.

litigation of the underlying claim, given the Tenants' (unopposed) statements in the Motion for Fees that Housing Provider Kerpec Management has apparently failed to register as a foreign corporation and previously stopped payment on a settlement check to the Tenants. In that light, the Tenants' counsel could reasonably anticipate and spend time working to prepare for actions to collect the money owed, and there is no unfairness in shifting those fees to the Housing Provider.

Relatedly, the Tenants seek leave to file yet another motion for fees at any later time if the Housing Provider fails to pay the fees awarded herein. *See* Motion for Fees at 26 (proposed order). We decline to leave this matter open for further fees litigation before the Commission. *See* 710 Jefferson Street, 123 A.3d at 186 ("[a] request for attorney's fees should not result in a second major litigation" (quoting Hensley, 461 U.S. at 437)). If the Tenants are required to seek enforcement of this order as a judgment in the Superior Court, *see* D.C. Official Code § 42-3502.18, that will be the appropriate forum to determine any reasonable amount of fee shifting under D.C. Official Code § 42-3509.04 (or any other grounds for fee shifting in collections actions that arise outside of the Act).

We are satisfied that the time entries provided in the declarations of the Tenants' attorneys adequately document reasonable uses of time in litigating the appeals in this case and preparing the Motion for Fees. Accordingly, we make no deductions from the Requested Lodestar.

### C.    Adjustments to Lodestar

As noted above, the Commission's rules provide a list of 12 factors by which the lodestar may be adjusted, but these are generally "subsumed within the initial calculation of the reasonable rate and hours." 710 Jefferson Street, 123 A.3d at 180 n.12; *see* 14 DCMR § 3825.12(b) (2021) (lodestar method should be applied consistently with prevailing case law

Kerpec Mgmt., LLC v. Hartzfeld, RH-TP-19-31,242                                    5
Order Granting Attorneys' Fees
August 26, 2024

and that adjustment factors are only used in "extraordinary" circumstances). The Tenants do not seek any increase to the Requested Lodestar based on these factors, and the Housing Providers have filed no opposition to the Motion for Fees in which they might have asserted that circumstances warrant a reduction. Accordingly, we make no adjustment to the Requested Lodestar on these bases.

## II.    **CONCLUSION**

For the foregoing reasons, we grant the Tenants' Motion for Fees. The Housing Providers shall therefore pay Forty Three Thousand One Hundred Dollars ($43,100.00) in attorneys' fees to the Tenants within 30 days of this order.

**SO ORDERED.**

_____
ADAM R. HUNTER, CHIEF ADMINISTRATIVE JUDGE

### MOTIONS FOR RECONSIDERATION

Pursuant to 14 DCMR § 3823 (2004), final decisions of the Commission are subject to reconsideration or modification. The Commission's rule, 14 DCMR § 3823.1 (2004), provides, "[a]ny party adversely affected by a decision of the Commission issued to dispose of the appeal may file a motion for reconsideration or modification with the Commission within ten (10) days of receipt of the decision."

### JUDICIAL REVIEW

Pursuant to D.C. Official Code § 42-3502.19, "[a]ny person or class of persons aggrieved by a decision of the Rental Housing Commission . . . may seek judicial review of the decision . . . by filing a petition for review in the District of Columbia Court of Appeals." Petitions for review of the Commission's decisions are filed in the District of Columbia Court of Appeals and are governed by Title III of the Rules of the District of Columbia Court of Appeals. The court may be contacted at the following address and telephone number:

D.C. Court of Appeals
Office of the Clerk
430 E Street, N.W.
Washington, D.C. 20001
(202) 879-2700

Kerpec Mgmt., LLC v. Hartzfeld, RH-TP-19-31,242                                        6
Order Granting Attorneys' Fees
August 26, 2024

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **ORDER GRANTING ATTORNEYS' FEES** in RH-TP-19-31,242 was electronically served on this **26th** day of **August, 2024,** to:


Neil Colin Satterlund
Marc Borbely
D.C. Tenant's Right Center
1115 Massachusetts Ave., NW
Suite 300
Washington, DC 20005
satterlund@dctenants.com
borbely@dctenants.com

Richard J. Bianco
2020 L Street, NW
Suite 500
Washington, DC 20036
rich@lawrjb.com


LaTonya Miles
Clerk of the Court
(202) 442-8949