IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ARTEMUS EDEN,**<br><br>Plaintiff / Counter-Defendant,<br><br>v.<br><br>**STATION TOWNHOUSES LLC, et al.,**<br><br>Defendants / Counterclaimants | Case No. 1:25-cv-02944 |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO "APPELLEE'S" MOTION FOR ATTORNEY'S FEES**

The Court should deny the Motion for Attorney's Fees filed by Plaintiff Artemus Eden. As Defendants-Appellants Station Townhouses LLC and Bozzuto Management Company (together, "Station House") acknowledged in our November 26, 2025 Supplemental Statement Regarding Jurisdiction filed in the D.C. Circuit, *see* Exhibit 1, we made an honest, though unfortunate, mistake in assessing the diversity of the respective parties. Despite some imprecision in the language of the notice of removal, which was drafted under the time pressure of a pending request for a temporary restraining order in D.C. Superior Court, counsel for Station House recognize the distinctions between the citizenship of a corporate entity and that of a pass-through entity such as a limited liability company. That understanding is reflected in Station House's October 2, 2025 Certificate as to Parties, Rulings, and Related Cases, *see* Exhibit 2, which accurately states that "Station Townhouses LLC is a limited liability company organized under the laws of Delaware and wholly owned by Capitol Place Mezz LLC, a Delaware limited liability company."

974191

In the rush of activity to evaluate and remove the case and prepare for an evidentiary hearing, Station House and its counsel were not as thorough as we could have been in assessing all investors who participate in the ownership chain. But we did not act unreasonably, and the removal (though erroneous) certainly was not, as Mr. Eden suggests, "blithely careless." The Station House investment structure is exceedingly complex, with dozens of entities and individuals participating at various levels of ownership. The diversity-defeating D.C. co-trustee of two Maryland grantor trusts is not a direct owner of Station Townhouses LLC, nor of Capitol Place Mezz LLC, nor of its parent, nor of its parent. Rather, he sits at the top of one half of the ownership column, together with roughly seventy-five individuals, family corporations, and personal trusts that together own an 8.5983% limited partner interest in an entity remote from Station Townhouses LLC. All of this is set forth in the Supplemental Statement Regarding Jurisdiction and the attachments thereto. Moreover, the addresses of record held by Veris Residential for the trusts in question are in Maryland, and only through close review of a Veris business record did undersigned counsel discover a reference to D.C. tax residency—a clue that led to further inquiry and, ultimately, the recognition that one of the two co-trustees is a D.C. citizen. At no point prior to that discovery did undersigned counsel have any reason to suspect that the parties were not completely diverse. After all, the party entity is a non-D.C. entity; its parent entity is a non-D.C. entity; and the two ownership groups (New York–based Fisher Brothers and New Jersey–based Veris Residential) likewise are out of state.[1]

Mr. Eden's counsel baselessly suggests that Station House did not "adequately prepare" its presentation to the D.C. Circuit, Mot. at 8, chiding Station House for failing to "read their

---

[1] While Mr. Eden's counsel "did wonder whether removal was appropriate," Mot. at 3, he never raised his concern with undersigned counsel, and he did not seek discovery pertaining to Station House's citizenship.

974191

own trust documents," *id.* at 1. This is more of the snark that permeates much of Mr. Eden's briefing—snark that has never made sense to undersigned counsel, given the gravity of Mr. Eden's misconduct and the disruption he has caused in the Station House community. To be clear, we **do not represent** the D.C. trustee, who is an investor in an entity remote from Station House. That said, following the D.C. Circuit's directive, we did the necessary diligence to ascertain that the trusts in question likely are "traditional" trusts under *Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378 (2016), such that the citizenship of the trustee is imputed to the trust. While the D.C. Circuit in *Wang ex rel. Wong v. New Mighty U.S. Trust*, 843 F.3d 487, 493 (D.C. Cir. 2016), recognized some ambiguity in the *Americold* test, the D.C. trustee advised us that the trusts in question are irrevocable grantor trusts under Maryland law. An irrevocable grantor trust is not a REIT, and it does not appear to be any other statutory trust that, like a REIT, resembles an unincorporated entity. Rather, a grantor trust is an estate- and tax-planning vehicle.[2] Thus, while our Supplemental Statement in the D.C. Circuit did not assert with absolute conviction that the trusts in question are "traditional" trusts (because, respectfully, the law in this space does not appear to us to be entirely fixed and certain), we had at that time and have now no information that would suggest these trusts are equivalent to the "trust" at issue in *Americold*.

      We took the D.C. Circuit's directive seriously. Following the directive, we coordinated closely with our clients to run down details about the complex Station House organizational structure. We studied organizational charts and other documents, and we researched the law

---

[2] *E.g.*, Brandon D. Hamm & Alexander J. Wolf, *A Primer on Grantor Trusts*, Neb. Law., Sept.-Oct. 2016, at 5, https://www.koleyjessen.com/assets/htmldocuments/wp-content/uploads/TNL-0916b.pdf; Jeanne L. Newlon, *Developments Involving Grantor Trusts*, ALI-ABA Estate Planning Course Materials J., Aug. 2010, at 27, https://www.venable.com/-/media/files/publications/2010/08/developments-involving-grantor-trusts/files/developments-involving-grantor-trusts/fileattachment/newlongrantor_trusts.pdf.

974191

around trust citizenship and the impact of non-diverse persons remote in an investment structure. Any first-year law student would understand that the parties on both sides of the 'v' must be completely diverse for traditional diversity jurisdiction to attach, but for a complex organization like Station House, the analysis is far more legally and factually complex.

None of this is intended as an excuse. We genuinely regret our error and the inconvenience to the Court, and (to whatever extent he was inconvenienced, despite getting essentially the relief he sought) Mr. Eden and his counsel. And we certainly will be more thorough the next time we are presented with a possibility for removal on diversity grounds. Errors like ours, though, are not surprising in the context of litigation involving complex investment structures. *Compare Brownsville M.D. Ventures, L.L.C. v. Pineda Reo, L.L.C.*, No. 1:15-cv-00098, 2015 WL 12748036, at *3 (S.D. Tex. Sept. 29, 2015) ("Tarrant Advisors, Inc., a corporation that is a general partner of a limited partner of a limited partner of Defendant's managing member, is a Texas citizen, as are all the members of the Plaintiff limited liability entity. Therefore, there is not complete diversity."), *with BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691, 698 (1st Cir. 2023) ("[W]e conclude that the record is insufficient to establish complete diversity between plaintiff and defendants because it does not conclusively establish defendants' citizenships. The parties have now failed multiple times to establish diversity."), *and ADA Carbon Solutions (Red River), LLC v. Atlas Carbon, LLC*, 146 F.4th 1296, 1300-03 (10th Cir. 2025) (reciting convoluted procedural history involving uncertainty about entity citizenship). In *Turner Bros. Crane & Rigging, LLC v. Kingboard Chemical Holding Ltd.*, No. 06-88-A, 2007 WL 2848154, at *4 (M.D. La. Sept. 24, 2007), although the court rejected the defendant's argument that the citizenship of one investor, "approximately five entities removed from [plaintiff], should not be considered for diversity jurisdiction purposes," the court also

observed that the controlling Supreme Court case, *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), "did not address the issue of determining the citizenship of multi-tiered partnerships or other incorporated [*sic*] associations, which is the issue in this case." These matters are not simple, and Mr. Eden's overheated rhetoric notwithstanding, errors like ours certainly are not indicative of bad faith or objectively unreasonable behavior.

Mr. Eden requests attorneys' fees under 28 U.S.C. § 1447(c) or, alternatively, Rule 11. With respect to § 1447(c), Mr. Eden fails to articulate any costs he "incurred as a result of the removal," as the statute requires. Only those fees relating to the removal itself (including litigating the jurisdictional issue) could potentially be compensable:

> When defendants remove a case improperly . . . they cause the plaintiffs to incur the expense of seeking a remand. That expense is a direct result of the removal, and section 1447(c) permits the plaintiffs to recoup that expense. In contrast, other fees and costs incurred in federal court after a removal may be related only tenuously to the removal, as when they replace similar fees and costs that would have been incurred in state court if the litigation had proceeded there. Such fees and costs cannot be considered "incurred as a result of the removal."

*Baddie v. Berkeley Farms, Inc.*, 64 F.3d 487, 490 (9th Cir. 1995); *see N.C. ex rel. Stein v. Eonsmoke LLC*, 423 F. Supp. 3d 162, 171 n.6 (M.D.N.C. 2019) ("The State may not recover fees and costs that were 'incurred coincidentally in conjunction with the removal of the action' to federal court and would have been incurred anyway in state court proceedings." (citation omitted)).

The Court should not credit Mr. Eden's conjecture that "the D.C. Superior Court would have granted a preliminary injunction out of hand." Mot. at 9. Had Station House remained in D.C. Superior Court, we would have insisted on the same evidentiary proceeding that the district court conducted here. *See Feaster v. Vance*, 832 A.2d 1277, 1287-88 (D.C. 2003) (reciting preliminary injunction standard under D.C. law, which resembles the federal standard). And had

5

the superior court denied our request for an evidentiary hearing or held the hearing and then granted a preliminary injunction, we would have sought the same emergency appellate review that we did here. While Mr. Eden "came to this Court prepared to make a relatively brief and narrow presentation," Mot. at 14, undersigned counsel have no regrets about putting together an evidentiary presentation consisting of law enforcement officials, Station House witnesses, and an expert on dignitary protection—so the Court was fully informed about the risk of harm that Mr. Eden presents to Station House, its employees, and its residents.[3]

Furthermore, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Reasonableness is evaluated 'at the time of removal, irrespective of the fact that it might ultimately be determined that removal was improper.'" *Jones v. District of Columbia*, 105 F. Supp. 3d 12, 13-14 (D.D.C. 2015) (quoting *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)). That rule makes sense, since cases are legion where, for one reason or another, a case once removed on diversity grounds is remanded to the court from which it came.[4] Defendants should not be penalized for availing themselves of a federal forum when they believe mistakenly but in good

---

[3] Mr. Eden's comparison of this tort case to eviction defense work, Mot. at 10, is inappropriate. This case is factually and legally complex, and the Court properly allowed Station House to put on a robust defense at the preliminary injunction hearing.

[4] *E.g.*, *Dream Builders & Design Inc. v. Gen. Motors LLC*, No. 2:25-cv-06982-JLS-MAR, 2025 WL 3022663, at *3 (C.D. Cal. Oct. 28, 2025) (remanding case; awarding no fees); *Provision-Med LLC v. Surber*, No. 1:24-cv-74, 2025 WL 2880331, at *3 (S.D. Ohio Oct. 9, 2025) (same); *Breathe DC v. Swedish Match N. Am. LLC*, — F. Supp. 3d —, 2025 WL 2759042, at *4, 6 (D.D.C. Sept. 29, 2025) (same); *Marker v. Darden Rests., Inc.*, No. 2:24-cv-01559-RJC, 2025 WL 1930171, at *3 (W.D. Pa. July 14, 2025) (same); *Organic Consumers Assoc. v. Foster Farms, LLC*, No. 24-cv-1703, 2025 WL 942394, at *3-4 (D.D.C. Mar. 26, 2025) (same); *Quiles v. Terminix Int'l Co.*, No. 2:19-cv-06825-AB-JPR, 2019 WL 5258574, at *1-2 (C.D. Cal. Oct. 16, 2019) (same); *Simon v. Hofgard*, 172 F. Supp. 3d 308, 320-21 (D.D.C. 2016) (same); *Nextwave Holdco LLC v. Inukshuk Wireless P'ship*, No. 13-cv-613-MMA (BLM), 2013 WL 12186156, at *1 (S.D. Cal. Apr. 24, 2013) (same).

974191

faith, based on the circumstances at the time of removal, that diversity jurisdiction is warranted. Station House's honest mistake in missing the citizenship of one trustee in a group of around seventy-five investors, five levels removed from the subject entity, and in the face of a TRO, is not "objectively unreasonable" by any stretch of the imagination.

Because Mr. Eden does not identify costs he "incurred as a result of the removal," his request for fees under § 1447(c) is meritless. His alternative request for fees under Rule 11 is both procedurally and substantively deficient. As Mr. Eden acknowledges in his brief, before making such a request, he was required to serve his motion and allow twenty-one days for the "challenged paper, claim, defense, contention, or denial" to be withdrawn or corrected. Fed. R. Civ. P. 11(c)(2). The request is quadruply improper because (i) Mr. Eden did not serve his motion on undersigned counsel in advance; (ii) he did not honor the 21-day safe harbor; (iii) he did not make the request in a motion "made separately from any other motion," *id.*; and (iv) BMC had already acknowledged its unintentional error and so had nothing further to correct. *See Avila v. Costco Wholesale Corp.*, No. 3:23-cv-01362-H-DEB, 2023 WL 6061289, at *4 (S.D. Cal. Sept. 18, 2023) (declining to consider "procedurally deficient" Rule 11 motion in the context of an erroneous removal); *Silvani v. Chang*, No. 1:23-cv-222, 2024 WL 2931181, at *5 (S.D. Ohio June 11, 2024) (denying Rule 11 motion in the context of erroneous removal both because plaintiffs did not file a "standalone motion for sanctions" and because plaintiffs made "no representations or arguments that they complied with Rule 11's safe harbor provision").

Rule 11's "safe-harbor provision . . . gives litigants 'an opportunity to withdraw' or correct potentially problematic filings before facing the strong medicine of judicial sanctions." *Farina v. Sanders*, No. 21-2593 (TJK), 2025 WL 2086421, at *1 (D.D.C. June 26, 2025). "Courts cannot consider the substantive aspects of the motion until this procedural rule has been

974191

satisfied . . . ." *Mpoy v. Burst*, No. 23-cv-03027 (BAH), 2024 WL 2305150, at *2 (D.D.C. Jan. 25, 2024) (citations and internal quotation marks omitted); *see also, e.g.*, *Triantos v. Guaetta & Benson, LLC*, 91 F.4th 556, 565 (1st Cir. 2024) ("The district court plainly erred by granting G&B's sanctions motion when (1) G&B served its motion on Triantos long after the district court already had dismissed the offending complaint, and (2) in any event, G&B had not met its obligation under Rule 11's safe-harbor provisions to serve the motion on Triantos twenty-one days prior to filing it with the court."); *Petersen v. 3 Prosperity*, No. 1:24-cv-00014, 2025 WL 2749667, at *3 (D.V.I. Sept. 27, 2025) ("failure to provide the nonmovant with the 21-day grace period is a death knell to the motion").

The Court cannot consider Mr. Eden's procedurally deficient Rule 11 request, but the request has no merit in any event. Mr. Eden relies on *Elanex Pharmaceuticals, Inc. v. Wegner & Bretschneider, P.C.*, 129 F.R.D. 381 (D.D.C. 1989), a case predating the Rule 11 safe harbor provision,[5] where the court awarded sanctions after erroneous removal because one of the defendant entities, a professional corporation, was a citizen of the District of Columbia, and thus a case filed in D.C. Superior Court could not be removed. It is one thing to deem unreasonable a corporate party's failure to acknowledge its citizenship, since corporations are citizens of those states in which they are incorporated and have their principal place of business. *See Louis G. Orsatti, DDS, P.C. v. Allstate Ins. Co.*, No. 5-20-CV-00840-FB-RBF, 2020 WL 5948269, at *2 (W.D. Tex. Oct. 7, 2020) ("a professional corporation is treated as any other corporation for diversity purposes"). That is not a complicated analysis. In the context of pass-through entities, though, and particularly those with multiple tiers of ownership, the analysis can be extremely complex, and honest errors are far more likely. Had Station Townhouses LLC been owned by an

---

[5] "Rule 11 was amended in 1993 to add, *inter alia*, a 21-day 'safe harbor' provision." *Horton v. Tex. Fed'n for Children PAC, Inc.*, No. 3:22-CV-2736-D, 2024 WL 2754042, at *1 (N.D. Tex. May 29, 2024).

8

974191

individual citizen of the District, the impropriety of removal would have been obvious. But nothing was obvious about a D.C. trustee lurking in a pool of roughly seventy-five investors, five levels up on one side of the ownership group.

For the same reason, Mr. Eden's reliance on *Weisman v. Rivlin*, 598 F. Supp. 724 (D.D.C. 1984), another case predating the safe harbor provision, is improper. In *Weisman*, the plaintiffs' attorney "assumed" that his client was incorporated in Maryland and "did not learn of the Delaware incorporation until the last minute." *Id.* at 726. Bizarrely, the complaint "on its face showed that diversity was not complete: both plaintiff Chromotech, Inc., and defendant New Venture Capital Corporation were each incorporated in Delaware and thus were citizens of that state." *Id.* at 725. Despite the lawyer's negligence, the court went on to award only a fraction of the fees requested, in part because "the rule requires that the work expended be causally linked to the improperly filed paper," but "much of the work was linked to learning background and meeting the plaintiffs' motion to reinstate [complaint] rather than disputing jurisdiction under the original complaint." *Id.* at 726. In other words, *Weisman* teaches that Rule 11 sanctions, when properly awarded, should correspond to the offending act and are not a gateway to, as Mr. Eden requests, fund an adversary's entire litigation effort. *See* Fed. R. Civ. P. 11(c)(4) ("The sanction may include . . . if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses ***directly resulting from the violation***." (emphasis added)).[6]

---

[6] Mr. Eden falsely states that Station House "presented the Court with a grab bag of . . . frivolous arguments." Mot. at 13. He identifies none. It was not "frivolous" for undersigned counsel to emphasize that courts should be very confident in the movant's likelihood of success on the merits before granting a preliminary injunction. It was not "frivolous" for undersigned counsel to argue that a jury could find in Station House's favor, while acknowledging that the case is not a slam dunk for Station House. It was not "frivolous" for undersigned counsel to advocate for imposition of a bond where Federal Rule of Civil Procedure 65(c) appears to require one, while acknowledging in colloquy with the Court that there are cases where courts have declined to impose a bond.

9

Despite the foregoing discussion, if the Court were inclined to award any fees (presumably under 28 U.S.C. § 1447(c), since Mr. Eden's Rule 11 request is procedurally deficient), the Court should direct Mr. Eden's attorneys to file a supplemental statement identifying those amounts, ***and only those amounts***, that relate specifically to the jurisdictional issue that is dispositive of the federal case.

## Conclusion

The Court should deny "Appellee's" Motion for Attorney's Fees.

Respectfully submitted,

**GALLAGHER LLP**

*/s/ Joe Dugan*
Christina F. Araviakis (Bar No. MD0203)
caraviakis@gallagherllp.com
James D. Bragdon (Bar No. 1017743)
jbragdon@gallagherllp.com
Joe Dugan (*pro hac vice*)
jdugan@gallagherllp.com
Sangeetha Kannan (*pro hac vice*)
skannan@gallagherllp.com
218 North Charles Street, Suite 400
Baltimore, MD 21201
Telephone: (410) 727-7702
Fax: (410) 468-2786
*Attorneys for Defendants*

Date: January 24, 2026

974191